IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| NATIONAL BOARD FOR CERTIFICATION IN OCCUPATIONAL THERAPY, INC., | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-16-343 |
| JEFFREY M. SHANE, *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION AND ORDER

Plaintiff National Board for Certification in Occupational Therapy, Inc. ("NBCOT") filed suit against Defendants Jeffrey M. Shane d/b/a Pass the NBCOT LLC d/b/a Pass the OT and Stephanie Shane d/b/a Pass the NBCOT LLC d/b/a Pass the OT (together, "the Shanes"), alleging trademark infringements, counterfeiting, copyright infringement, unfair competition, and other violations of the Lanham Act, federal copyright law, and common law, based on the Shanes' use of NBCOT's name and test questions in the Shanes' tutorial program (formerly called Pass the NBCOT, now called Pass the OT) and related website. The parties entered into a settlement agreement and filed a Joint Motion for Entry of Stipulated Consent Judgment, ECF No. 17, which the Court approved, entering a Final Judgment on Consent ("Consent Decree"), ECF No. 18. The Consent Decree permanently enjoined the Shanes from, *inter alia*, "[u]sing, copying, displaying, distributing, publicly performing, making derivative works from or otherwise infringing NBCOT's Copyrighted Work, except as either permitted under the doctrine of fair use or with NBCOT's consent." Consent Decree ¶ 4(c). It also provided:

> To the extent Defendants have not already done so, Defendants are directed to destroy all infringing test materials, advertisements, labels, signs, prints, packages, wrappers, receptacles and all other materials in their possession or under their control that contained unauthorized uses of the name or mark NBCOT, either alone or in combination with other words, phrases or designs, and any confusingly similar name or more or any other reproduction, counterfeit, copy or colorable imitation of Plaintiff's certification marks and trade names and all plates, molds, matrices, and other means of making or duplicating the same.

*Id.* ¶ 6.

Pursuant to the settlement agreement, if NBCOT saw any future violations, it would let the Shanes know and give them ten days to cure before coming to the Court for resolution. Defs.' Resp. 8–9; Pl.'s Mem. 1, 4 n.1, ECF No. 19-1. Specifically the settlement agreement provided:

> In the event NBCOT discovers activity in the future by the Shanes and/or PTOT that NBCOT deems an infringement of their trademarks or copyrights, NBCOT shall provide written notice to the Shanes and PTOT specifically identifying the infringement with sufficient detail to allow the Shanes or PTOT to cure and allow them ten (10) business days to cure the infringement prior to taking any action against any or all of them. For the avoidance of any doubt, if the Shanes and/or PTOT cure the alleged infringement within ten (10) business days, NBCOT will refrain from asserting any claim against the Shanes and/or PTOT for damages or otherwise.

Defs.' Resp. 8–9. The parties have referred to this as the "safe harbor" notice provision.

At the end of April, NBCOT filed a motion, ECF No. 19, for an order to show cause why the Shanes should not be held in contempt for violating the parties' settlement agreement and the Court's Consent Decree "including by copying and using a large number of NBCOT's copyrighted test questions in Defendants' own Pass the OT test preparation materials." Pl.'s Mem. 1. NBCOT asks the Court to "hold Defendants in civil contempt and award NBCOT its reasonable costs and attorneys' fees in connection with this motion." *Id.* at 2. I issued a show cause order, ECF No. 22, directing the Shanes to file a written response (which they did, ECF No. 23) and NBCOT to file a reply (which it did, ECF No. 24). The issue is now ripe for

resolution, and a hearing is not necessary. *See* Loc. R. 105.6. Because NBCOT has not established contempt by clear and convincing evidence, I will deny the motion.

## **Contempt Sanctions**

The Court has the authority to sanction an individual for failing to follow the Court's order or decree. 18 U.S.C. § 401(3). Moreover, "[t]he case law is well established that district courts have the inherent power to sanction parties for certain bad faith conduct, even where there is no particular procedural rule that affirmatively invests the court with the power to sanction." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 955 (4th Cir. 1995). Indeed, for almost two centuries, it has been established that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution . . . . because they are necessary to the exercise of all others" and they enable courts "to preserve [their] own existence and promote the end and object of [their] creation." *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33–34 (1812); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Hudson*, 11 U.S. (7 Cranch) at 34); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980) (same), *superseded on other grounds by statute as stated in Morris v. Adams–Millis Corp.*, 758 F.2d 1352, 1357 n.7 (10th Cir. 1985). "This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). Undergirding this authority "is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010). Thus, "[d]ue to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *Shaffer Equip. Co.*, 11 F.3d at 461; *see also Chambers*, 501 U.S. at 43

(holding that trial courts are "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates"); *Strag*, 55 F.3d at 955 (quoting *Chambers*, 501 U.S. at 43).

Therefore, the court has the "inherent power to control the judicial process and litigation, a power that is necessary to redress conduct which abuses the judicial process." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 505 (D. Md. 2009) (quoting *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 263–64 (2007) (quoting *Chambers*, 501 U.S. at 45–46)) (internal quotation marks omitted); *see also Adkins v. Wolever,* 554 F.3d 650, 652 (6th Cir. 2009); *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. 2006); *Flury v. Daimler Chrysler Corp.,* 427 F.3d 939, 944 (11th Cir. 2005); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517–18 (D. Md. 2010); *In re NTL, Inc. Secs. Litig.,* 244 F.R.D. 179, 191 (S.D.N.Y. 2007); *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003). The court's inherent authority to sanction arises when a party "abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Shaffer Equip. Co.*, 11 F.3d at 462. Pursuant to their inherent authority, courts "may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions." *Id.* at 461–62. They may enforce "the observance of order," such as by imposing fines or prison sentences for contempt. *Hudson*, 11 U.S. (7 Cranch) at 34.

Contempt sanctions may be civil or criminal. *Buffington v. Balt. Cnty.,* 913 F.2d 113, 133–34 (4th Cir. 1990). It is civil contempt "[w]hen the nature of the relief and the purpose for which the contempt sanction is imposed is remedial and intended to coerce the contemnor into

compliance with court orders," rather than to "vindicate the authority of the court." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 537 (D. Md. 2010). A fine is remedial when paid to the opposing party, rather than to the court, although a fine "payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Id.* (quoting *Buffington*, 913 F.2d at 133–34).

> To establish civil contempt, each of the following elements must be shown by clear and convincing evidence:
>> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) ... that the decree was in the movant's "favor"; (3) ... that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) ... that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (quoting *Colonial Williamsburg Found. v. The Kittinger Co.*, 792 F. Supp. 1397, 1405–06 (E.D. Va. 1992), *aff'd* 38 F.3d 133, 136 (4th Cir. 1994)).

## **Analysis**

*Valid Decree in NBCOT's Favor that the Shanes Knew About*

It is undisputed that this Court entered the Final Judgment on Consent (Consent Decree) on July 6, 2016, and the Shanes are aware of it. Additionally, the Decree was in NBCOT's favor, as it enjoined the Shanes from infringing on NBCOT's trademark and copyright protected materials.

*Knowing Violation of the Terms of the Decree*

Defendants filed affidavits to support their assertion that they did not know they were violating the Decree until Plaintiff gave them notice pursuant to the safe harbor notice provision, and that they then promptly deleted the infringing materials. S. Shane Aff., ECF No. 23-1; J.

5

Shane Aff., ECF No. 23-3. Because the affidavits are almost identical, I only cite to Stephanie Shane's. According to Stephanie Shane, when NBCOT filed suit, after Defendants thought that they had complied with Plaintiff's requests regarding trademark and copyright protected materials, Defendants

> hired an attorney and worked diligently to address every new issue Plaintiff raised - from adding an affiliation disclaimer to every page of the website, to adding © to every "NBCOT," to changing the syntax of titles and other text to ensure that consumers would not be confused into thinking the two companies were affiliated *(e.g.* "NBCOT exam tutors" was changed to "tutors for the NBCOT© exam"). [They] removed a newly-discovered Pass the NBCOT logo found on an old invoice issued by a vendor, and [they] removed old promo videos [they] believed had long been removed from YouTube.

S. Shane Aff. ¶ 11. She noted that "Plaintiff had full access to [Defendants'] website" but "did not identify or advise [them] of any practice test questions, other than th[e] four [originally identified], as infringing on its copyrights." *Id.*

Stephanie Shane said that she "had written the vast majority of the practice test questions in the database and periodically purged old questions," but, some of the original questions were NBCOT questions that students had read to her and that she had typed "into a Word document while [she] talked" to the students so that she "could look at the question and explain the answer." *Id.* ¶¶ 4, 12. Because she "did not know if any . . . questions provided by students remained," the Shanes, "[i]n an abundance of caution, . . . decided to modify all of the practice test questions in the database to make sure they did not violate any copyright." *Id.* To do so, they "paid seven freelance contractor writers to revise each of the over 800 questions in the database." *Id.*

According to Stephanie Shane, a contractor in India whom Defendants hired "to do some marketing" in January 2017 "went rogue and posted various materials online without [their] knowledge or permission." *Id.* ¶ 13. They learned that the materials posted infringed

6

on NBCOT's trademarks or copyrights when NBCOT contacted them later that month, and they removed all of the materials within one week of notice and fired the contractor. *Id.* ¶¶ 13–14.

Then, on February 11, 2017, a student "claimed [by email] that certain practice test questions were the same as Plaintiff's questions" but did not respond to Stephanie's email asking the student to identify the questions. *Id.* ¶ 15. The student said that she "SAW over 45 questions that PasstheOT used WORD FOR WORD from NBCOT." Email to S. Shane, ECF No. 23-2. Stephanie Shane insists that she "had no way of knowing which questions might be an issue" because the student did not respond to her request for more detailed information. S. Shane Aff. ¶ 15.

NBCOT filed its contempt motion more than two months later, on April 30, 2017, without first contacting the Shanes. *Id.* ¶ 16. The motion identified the 48 infringing questions, half of which, according to Stephanie Shane, "had already been removed through the natural process of purging questions," and Jeffrey Shane "removed the remaining 24 questions within 48 hours of Plaintiff filing the motion." *Id.*

Stephanie Shane asserts that, after NBCOT filed its contempt motion, the Shanes offered to compare their questions to NBCOT's to remove infringing questions, but "Plaintiff . . . declined to disclose its copyrighted questions." *Id.* ¶ 17. The Shanes also "offered to provide Plaintiff with access to all of Pass the OT's questions, so that it could do the comparison on its own," but "Plaintiff . . . again declined." *Id.* At that same time, NBCOT declined the Shanes' "offer[] to pay a reasonable fee for one of Plaintiff's employees to make the comparison and . . . offer[] to delete any identified practice test question without further discussion." *Id.* After Plaintiff filed its contempt motion, Stephanie Shane "personally

review[ed] every single question in Pass the OT's database" and deleted "[a]ny question [she] could not definitively say was [her] original work." *Id.* ¶ 18.

Insofar as the Shanes argue that they were unaware of ongoing infringement because it was their contractors who used trademarked or copyrighted material, NBCOT insists that the Shanes "cannot avoid contempt by shifting the blame for their infringing conduct to other unidentified individuals." Pl.'s Reply 4. But NBCOT does not cite any authority in support of this argument.

The Shanes also argue that "[i]t is Plaintiff . . . who is in breach," because NBCOT "failed to give notice and the opportunity to cure as required by the safe harbor notice provision in the settlement agreement and instead filed this motion for contempt seeking only its attorney's fees incurred in bringing this unnecessary motion." Defs.' Resp. 12–13. The safe harbor provision was central to the Consent Decree, and it required that NBCOT provide notice of and an opportunity to cure any violations. As Stephanie Shane notes, the Shanes did not have access to NBCOT's copyrighted materials to compare their test questions proactively if they were uncertain whether their work was original. NBCOT provided notice three times in short succession in January; it is undisputed that the Shanes took prompt remedial action each time. NBCOT then filed the contempt motion without providing notice or an opportunity to cure the violations NBCOT noted but had not previously disclosed. As for the February 11, 2017 email from a student who signed up for a review session with the Shanes, her email made clear that she "encountered many flaws with the program," only one of which was the replication of NBCOT test questions. Email to S. Shane. And, Stephanie Shane promptly requested additional information the next morning, but did not hear back from the student. Email to Student, ECF No. 23-2.

Under the circumstances, the Shanes' actions do not show a contemptuous disregard for their obligations under the Consent Decree or that they knowingly violated the Consent Decree. Even if it can be argued, as NBCOT does without authority, that the Shanes are responsible for the actions of the seven freelance writers who revised the questions and the contractor in India, NBCOT has not shown that the contractors knowingly violated the Consent Decree. Further, NBCOT failed to give notice of the remaining infringing questions and the opportunity to cure, as required by the safe harbor notice provision of the Consent Decree, before filing the pending motion. Each previous time the Shanes received notice, they acted promptly, showing that once they were aware of a violation, they did not knowingly continue to violate the Consent Decree. Moreover, the Shanes proposed three separate options for NBCOT to confirm that no infringing questions remained – options that NBCOT could have pursued in lieu of filing a contempt motion, had NBCOT provided the required notice.

*Harm*

NBCOT contends that it has suffered harm from the Shanes' use of "NBCOT's copyrighted work for their own benefit, and in competition with NBCOT, without paying any compensation to NBCOT." Pl.'s Mem. 8. They do not offer any proof of this harm. The Shanes do not address this contention.

NBCOT also argues that it "has incurred significant costs and legal fees in policing Defendants' ongoing violations of the Settlement Agreement and Consent Decree and in bringing this motion." Pl.'s Mem. 8. NBCOT insists that it "filed the motion because of Defendants' repeated disregard for both the Settlement Agreement and Consent Decree." Pl.'s Reply 6. The only award it seeks, however, are the attorneys' fees associated with the consent motion. *Id.* at 9. In the Shanes' view, policing is a part of holding a copyright or trademark, and

9

harm from having to file this motion was "self-inflicted" because if NBCOT had complied with the safe harbor notice provision, it would not have incurred legal fees. Defs.' Resp. 16-17. It is true that, insofar as NBCOT filed the motion in response to the ongoing issue of infringing test questions, the legal fees associated with the motion could have been avoided by following the terms of the settlement agreement. And, the fact that NBCOT does not seek fees beyond those associated with this motion weakens its argument that its harm extends beyond these fees.

**Conclusion**

Under these circumstances, I cannot conclude that NBCOT has established by clear and convincing evidence that the Shanes "had knowledge (at least constructive knowledge) of [their] violations" of the Consent Decree" and that NBCOT "suffered harm as a result." *See Ashcraft*, 218 F.3d at 301 (quoting *Colonial Williamsburg Found.*, 792 F. Supp. at 1405–06). Therefore, I will not hold the Shanes in contempt. *See id.* NBCOT's motion, ECF No. 19, IS DENIED. The Court is troubled, however, by the ongoing issues associated with the Shanes' compliance with the Consent Decree, and the Shanes are cautioned that further violations of the Consent Decree by them would be unwise. It would be prudent for them to redouble their efforts to ensure strict compliance with it. To dispel any lingering concerns with compliance, the Court observes, but does not order, that the parties may wish to pursue one of the three options that the Shanes proposed, but which NBCOT rejected.

**ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is, this 6th day of July, 2017, hereby ORDERED that NBCOT's Motion, ECF No. 19, in which NBCOT asks the Court

to hold the Shanes in civil contempt and award NBCOT its reasonable costs and attorneys' fees in connection with the Motion, IS DENIED.

                                                                      _____ /S/_____
                                                                      Paul W. Grimm
                                                                      United States District Judge

lyb